UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
ANTHONY B. NELSON,                                          :
                                                            :
                              Plaintiff,                    :
                                                            :         03 Civ. 4441 (GEL)
              -against-                                     :
                                                            :         **OPINION AND ORDER**
BEECHWOOD ORGANIZATION,                                     :
                                                            :
                              Defendant.                    :
------------------------------------------------------------x

Anthony B. Nelson, *pro se*, Plaintiff.

Michael V. De Santis, Kaufman, Schneider & Bianco, LLP, Jericho, NY, for defendant.

GERARD E. LYNCH, District Judge:

      Plaintiff Anthony B. Nelson ("Nelson"), an African-American man, brings this employment discrimination action alleging that he was subjected to a hostile work environment, and subsequently terminated, on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). Defendant Beechwood Organization ("Beechwood") moves for summary judgment pursuant to Fed. R. Civ. P. 56, contending that (1) there is no evidence that Nelson was discriminated against on the basis of race; and (2) Beechwood was not Nelson's employer. For the following reasons, Beechwood's motion will be granted, and the case will be dismissed.

## BACKGROUND

      Beechwood is a construction company that develops housing projects. Nelson drove tucks for DMP Contracting ("DMP"), a Beechwood subcontractor, and for two-and-a-half to three years he worked almost exclusively on projects for Beechwood, reporting directly to

Beechwood personnel. Nelson v. Beechwood Org., No. 03 Civ. 4441, 2004 WL 2978278, at *1 (S.D.N.Y. Dec. 21, 2004). DMP receives at least 90% of its work from Beechwood. (De Santis Aff. Ex. E, Nelson Dep., at 56-57). During Nelson's time at DMP he became their "number one driver," took on substantial managerial-type duties such as hiring and dispatching drivers, and received job site instructions directly from Beechwood supervisors. (De Santis Aff. Ex. F.)

Taking the evidence in the light most favorable to Nelson, the events leading up to Nelson's dismissal are as follows. On June 21, 2002, Dean Hennedy, an assistant supervisor for Beechwood, asked Nelson to remove scrap metal from one of Beechwood's Bronx sites along with a coworker. Although leery about the legality of the work and the potential for damage to his truck, Nelson eventually accepted and completed this task. (Nelson Dep. 87-96.) Back at the site, while awaiting another load, Nelson allowed a curious coworker to examine the inside of his truck's cab, in which Nelson left his cellular phone.[1] A short time later Nelson noticed that his cell phone was missing from the cab, and he suspected it had been stolen by that coworker. Nelson, 2004 WL 2978278, at *1; (Nelson Dep. 99-102).

Nelson reported the incident to Hennedy, who initially was skeptical that the coworker had taken the phone. (Lerner Letter 1.) But when Nelson approached him days later, Hennedy told Nelson that the coworker, who had since disappeared and had not returned to the job site, was also suspected of stealing a supervisor's phone, and that Nelson should speak to Jack Kennedy, Beechwood's head supervisor, about the situation (Nelson Dep. 102-03), which Nelson did on June 26, 2002. Kennedy responded "as usual" by being "dismissive" (Lerner

---

[1] Nelson testified that his truck is a "show truck," which "is exactly what it means. It looks better than your Lexus." (Nelson Dep. 90.) He claims that after viewing the interior of the truck, the coworker told Nelson that "your . . . truck is dope inside." (Id. at 98.)

Letter 2), "rude and abrasive" (id.; Nelson Dep. 103), and, after an initial confrontation, staring at Nelson "challengingly" (Lerner Letter 2). After Nelson told Kennedy that he suspected the coworker of taking his phone when the coworker was inside Nelson's truck, the following heated exchange ensued:

> Kennedy: What the fuck is anybody doing up in your truck?[2]
>
> Nelson: You know, Jack, for three years you have had a chip on your shoulder. You have been screaming and been very abusive. My phone was stolen and I'm just trying to ask some questions here.
>
> Kennedy: Don't come back to my motherfucking job sites anymore.
>
> Nelson: Listen snapper head, don't come back to my neighborhood anymore either.

(Nelson Dep. 104-08; Lerner Letter 2.) As Nelson walked away he threw his cup of coffee to the ground in disgust. (Id.)

Kennedy, in his affidavit, claims that after he raised the fact that Nelson should not have allowed other workers in his truck, Nelson "accosted me with raised voice and menacing behavior," upon which Kennedy asked Nelson to leave the site. He also claims that Nelson threw down the coffee cup in his direction "and continued to exhibit menacing behavior." (Kennedy Aff. ¶ 9.) Nelson left the jobsite, and apparently was not permitted by Kennedy to return to any Beechwood site.

---

[2] Kennedy asserts that he informed Nelson that applicable Commercial Drivers License rules prohibited individuals other than certified drivers from entering trucks like Nelson's, (Kennedy Aff. ¶ 9). Nelson does not admit that Kennedy referred to this rule, but he does acknowledge that CDL rules prohibit unauthorized individuals in trucks like Nelson's. (Nelson Dep. 104.)

Nelson reported this incident to Danny Pirraglia, DMP's owner, as well as Les Lerner, Beechwood's owner. After approximately one week, during which time Nelson worked at the DMP yard and did not return to any Beechwood site, Pirraglia fired Nelson. (Nelson Dep. 80-84.) Nelson believes that although Pirraglia wanted to retain Nelson as an employee, he could not do so because DMP worked primarily, if not exclusively, for Beechwood, and Kennedy would not allow Nelson back at any Beechwood sites. (Lerner Letter 2-3; Nelson Dep. 76-77.) Nelson alleges that Pirraglia went to speak to Kennedy about taking Nelson back, but that Kennedy refused, telling Pirraglia that Nelson had been smoking marijuana with the coworker who allegedly stole Nelson's phone, which Nelson vehemently denies.[3] (Nelson Dep. 79-80, 83.)

In addition to the June 26, 2002, incident, Nelson recounts numerous instances of mistreatment by Beechwood supervisors in support of his claims:

- "Constant" comments from "Michael," a Beechwood supervisor, to Nelson, who speaks English, regarding the inability of certain Hispanic coworkers to speak English. (Id. 109-10.) Nelson concedes, however, that he did not hear anyone at Beechwood ever use a racial epithet, against him or anyone else. (Id. 125-26, 129.)

- An incident where a coworker of Hispanic origin, Fidel Cruz, who could not speak English, was stranded at a jobsite. When Nelson explained that the problem could have been avoided had the supervisor had certain directions translated into Spanish for Cruz, "[t]he supervisor responded that '[t]his is not the United Nations.'" Nelson suffered some blame in connection with this incident, for reasons that are unclear. (Id. 110-11.)

---

[3] In response to Beechwood's citation of medical records indicating that Nelson did use marijuana (De Santis Aff. Ex. G., at 1), Nelson correctly notes that "what I have admitted to in my personal medical records or what activity or unlawful consumption of occasional pot smoking on a vacation or in a hot tub with gorgeous young women" is irrelevant to this case. (Nelson Mem. 9.)

- Excessive criticism of the work performance of workers including Nelson by Kennedy, "Mike," and other supervisors, and unwarranted complaints to Pirraglia. (Nelson Dep. 114-16, 123.) For instance, Nelson explains that the supervisors would "call [Pirraglia] and complain and say oh, they [Nelson and coworkers] left the job three minutes to 3 [close of business]. What difference does it make. We dumped our load. We did our things for the day there. It is three minutes to 3 or not you are cleaning the job up. You have no use for us so they would take little things and try to make a mountain out of a mole hill." (Id. 115-16.)

- Being reprimanded by "Mike" for talking too much to people, where all Nelson was doing was giving morning greetings and being polite. (Id. 121-23.)

- General allegations of improper work procedures (e.g., overloading the trucks) and of frustrating Nelson's ability to work (e.g., changing the locks to Beechwood sites so that Nelson's keys, given to him by Pirraglia, would not work, preventing him from working early in the morning and on Sundays). (Id. 119-21, 125.)

- Rude, insulting, and abrasive treatment, including "screaming about nothing" from Kennedy. (Id.)

After being terminated, Nelson filed a charge against Beechwood with the Equal Employment Opportunity Commission, and received a right to sue letter. Nelson, 2004 WL 2978278, at *1. He then filed this action. Beechwood subsequently moved for judgment on the pleadings, arguing that Beechwood was not Nelson's employer, and thus could not be held liable under Title VII, and that the allegations of racial discrimination were insufficient. The Court rejected both of these arguments, holding that while Beechwood was not Nelson's direct employer, the complaint contained sufficient allegations that Beechwood and DMP jointly employed Nelson, Nelson, 2004 WL 2978278, at *4-*5, and that it sufficiently alleged race

discrimination, id. at *5.  Following discovery, Beechwood moved for summary judgment, making essentially the same arguments it made at the pleadings stage.[4]

**DISCUSSION**

I. Legal Standards

      A.  Summary Judgment

Summary judgment shall be granted if the Court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  To survive a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Kelly v. Lex, Inc., No. 03 Civ. 2778, 2004 WL 1752596, at *3 (S.D.N.Y. Aug. 4, 2004), or rely on "mere speculation and conjecture," Western World Insurance v. Stack Oil, 922 F.2d 118, 121 (2d Cir. 1990).  Instead, he must offer "concrete evidence from which a reasonable juror could return a verdict in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  In deciding a summary judgment motion, the Court must "resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion." Cifarelli v. Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

---

[4] After the motion was fully briefed, it came to the Court's attention that Beechwood had failed to comply with Local Rule 56.2 ("Notice To Pro Se Litigant Opposing Motion For Summary Judgment"), which required Beechwood to provide Nelson, a pro se litigant, with a copy of Rule 56 and an explanation of the nature of a motion for summary judgment and how to respond to it.  The Court issued an order incorporating such a notice, with a copy of Rule 56 attached, and provided Nelson with an opportunity to submit, after reviewing the notice and Rule 56, additional materials in response to Beechwood's motion.  Nelson submitted supplemental materials, and the Court has reviewed them along with the rest of the parties' submissions.

B. <u>Hostile Work Environment</u>

To prevail on a Title VII hostile work environment claim, a plaintiff must demonstrate that his workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993) (citations and quotation marks omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." <u>Id</u>. at 21. In addition, the plaintiff must prove that the hostile environment is the result of discrimination "because of" a protected ground, in this case, Nelson's race. 42 U.S.C. § 2000e-2(a)(1) (prohibiting only discrimination against an individual "because of such individual's race, color, religion, sex, or national origin"). The plaintiff must also prove that that hostile environment can be attributed to his employer.

C. <u>Adverse Employment Action</u>

To make out an adverse employment action claim under Title VII for discrimination, the plaintiff must first make a prima facie showing that (1) he is a member of a protected group; (2) qualified for his job; (3) suffered an adverse employment action; and that (4) the circumstances surrounding that action permit an inference of discrimination. <u>Williams v. R.H. Donnelley, Corp.</u>, 368 F.3d 123, 126 (2d Cir. 2004); <u>accord</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

If the plaintiff makes the necessary showing, the burden then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). After the defendant articulates a non-discriminatory reason for its actions, the plaintiff bears the burden of proving that the non-discriminatory ground is pretext for discrimination, that is, that the reason is false *and* that discrimination on a protected ground, in this case race, was the real reason for the adverse employment action. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-16 (1993) (noting that "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason").

II. The Standards Applied

    A. Hostile Work Environment

It is doubtful whether Nelson has provided sufficient evidence to permit a reasonable factfinder to find a hostile work environment. The standard for such a showing is demanding. See, e.g., Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (noting that "conduct must be extreme to amount to a change in the terms and conditions of employment"), Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (noting plaintiff must prove that workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." (internal quotation marks omitted)); Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) ("[E]ither a single incident [that] was extraordinarily severe, or . . . a series of incidents . . . sufficiently continuous and concerted to have altered the conditions of the working environment."); Carrero v. New York City Housing Auth., 890 F.2d 569, 577-78 (2d Cir. 1989) ("The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."); see also Ogbo v. New York State Dept. of Finance, No. 99

Civ. 9387, 2001 WL 986546, at *7 (S.D.N.Y. Aug. 28 2001) ("[P]laintiff must present evidence of racially vicious epithets, physically threatening or humiliating actions, or a pattern of such reprehensible behavior over an extended period of time." (citations omitted)); Rianola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001) (collecting cases holding same); Castro v. Local 199, 964 F. Supp. 719, 727-28 (S.D.N.Y. 1997) (same). Taking all of Nelson's evidence together, and at face value, it would be difficult for a factfinder to conclude that there were more than scattered incidents of rude or abrasive conduct, and not the sort of severe or continuous incidents that the law requires.

Indeed, there is a real question as to whether Nelson himself perceived the working environment to be hostile. See Harris, 510 U.S. at 22 ("[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."). In the letter he wrote to Beechwood's Les Lerner after he was dismissed, Nelson wrote: "Except for Jack [Kennedy], and minor problems with Mike, I have not had any problems with any of your other supers who are very courteous and easy to work with." (Lerner Letter 3.) When faced with this statement at his deposition, Nelson stated that "Everything was minor until it turned into a job – until it turned into the situation it turned into. . . . It's a serious problem but I don't want to look at it that way. It only became a serious problem when the problem became serious, when it turned into the loss of employment. That's when it became serious." (Nelson Dep. 141. But see id. 142 ("Let's just say [characterizing the problems with Mike as 'minor'] is a poor choice of words. It was a problem, whether it was minor or not."))

However, the Court need not decide whether the record is sufficient to require a trial on this issue, for even assuming that a hostile work environment existed, Nelson has failed to produce evidence that that hostility was attributable to discrimination on the basis of his race.[5] The only incidents suggestive of discrimination of any kind are the instances where comments were directed against certain of Nelson's Hispanic coworkers based on their inability to speak English. These incidents, involving Nelson's coworkers and related to *their* national origin, are at best minimally relevant to Nelson's claim of a hostile work environment on the basis of *his* race. See Smith v. AVSC Int'l, Inc., 148 F. Supp. 2d 302, 310 (S.D.N.Y. 2001) ("[A]llegations of harassing actions against other employees may be relevant to a hostile work environment claim[; h]owever, the other employees targeted must be in the same protected class as the plaintiff for the hostile work environment claim to withstand a motion to dismiss.").

While Nelson has unquestionably produced evidence from which a reasonable factfinder could conclude that Kennedy and other Beechwood supervisors were mean-spirited, petty, and hot tempered, that they did not particularly like Nelson, and that, in general, Beechwood jobsites were not welcoming or friendly places to work, Title VII is not a "general civility code." Faragher, 524 U.S. at 788. To prove that these conditions constituted a hostile work environment actionable under Title VII, Nelson must prove that they were a result of discrimination on the basis of his race. Because Nelson has failed to satisfy this requirement, his hostile work environment claim fails.

---

[5] Indeed, it is not entirely clear that *Nelson* believes that the alleged conduct was racially motivated. At least with respect to the overloading of the trucks, Nelson himself admits that "I never said to you that the loading of the trucks was racially motivated." (Nelson Dep. 132.)

B. Adverse Employment Action

Nelson's claim regarding adverse employment action also fail on the merits. Beechwood argues that it was not Nelson's "employer" as that term is defined in Title VII, and that therefore it cannot be said to have taken any adverse employment action against Nelson. However, it is unnecessary for the Court to address that issue. Assuming, arguendo, that Beechwood is Nelson's employer under a joint-employer theory, and that Nelson's dismissal from the Beechwood site on June 26, 2006, constitutes an adverse employment action, Nelson's claim of discriminatory firing fails for the same reason as his hostile work environment claim – the lack of any evidence tending to show a discriminatory basis for the action.

Regardless of whether Nelson has made out a prima facie case for discrimination, Beechwood has articulated a legitimate nondiscriminatory reason for firing Nelson – Kennedy's claim that during the June 26, 2002, cell phone incident, Nelson exhibited menacing behavior and threw a coffee cup in his direction.[6] In response to Beechwood's justification, Nelson has completely failed to produce evidence from which a reasonable finder of fact could conclude that racial discrimination was the real reason behind Nelson's dismissal. While Nelson explains that Kennedy did not like Nelson (Nelson Dep. 78), and was typically rude, abrasive, and a screamer – not only to Nelson, but to others (id. 129) ("I watched Jack be loud and boisterous and try to let everybody know he was insecure with himself. . . . I can tell you about incidents with Jack and other people.") – he does not produce any fact suggesting, indirectly or directly, that Kennedy's

---

[6] Although Nelson disputes Kennedy's version of this incident, he acknowledges having a hostile confrontation with Kennedy and tossing his coffee cup down in Kennedy's proximity. Thus, even accepting Nelson's testimony that he did not intend to be threatening, there is no dispute that Nelson (who was disliked by Kennedy in any event) exchanged harsh words with him, and engaged in behavior that a reasonable person could have perceived as threatening.

vitriol was motivated by racial animus. Kennedy is not alleged to have ever uttered racial slurs or other discriminatory comments against anyone, including Nelson, or engaged in other conduct suggestive of racial bias. Nelson points to no evidence that Kennedy's temper was directed more often or more aggressively toward black employees as compared to white employees. The mere fact that Kennedy, who perhaps had a short fuse, picked on Nelson more than others (id. 130) is insufficient to support a claim of discriminatory firing under Title VII. Kennedy's dismissal of Nelson may have been precipitate, mistaken, unfair, or the product of personal hostility, but it is not actionable unless it was based on racial animus. There is no evidence whatsoever to support a finding that the action was racially motivated.

For this reason, Nelson's adverse employment action claim fails.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Doc. #37) is granted, plaintiff's motion in opposition of summary judgment (Doc. #43) is denied, and the complaint is dismissed with prejudice.

SO ORDERED.

Dated: New York, New York
July 26, 2006

_____
GERARD E. LYNCH
United States District Judge